GEORGE A. DANIELS *vs.* LIEBIG MANUFACTURING COMPANY.

New Castle County, February Term, 1896.

**Practice. Nonsuit.**—In an action to recover damages for injuries alleged to have been caused by negligence, if the plaintiff does not show negligence by positive proof, or facts from which it may be reasonably inferred, a nonsuit should be granted.

**Same. Judicial Power. Jury.**—The effect of evidence is for the jury, but whether there is any evidence to go to the jury is for the Court to determine.

This was an action on the case to recover damages for injuries received by the plaintiff while he was employed by the defendant.

At the trial it appeared that the defendant had purchased the the factory formerly owned by the Walton & Whann Company, for the manufacture of phosphate, in the city of Wilmington. In one

of the factory buildings were several acid chambers which had never been used by the defendant, and for which it had no use in its business. The interiors of these chambers were lined on the sides and top with lead weighing from four to six pounds to the square foot.

The plaintiff came from Maryland, where he worked on a farm, but had been employed about fifteen years by the Walton & Whann Company as a laborer. He shovelled, wheeled, bagged, or did anything in that line, working around the factory, shop, and chambers, then in use. He had helped to tear the roof off of the tower on the building, and also to tear down scaffolding and was called upon to do such work around the building. Mr. Cresey was superintendent of the defendant company, and the next man under him was Mr. Weldin, and the next in authority was Mr. Errickson.

On Friday April 19, 1892, Mr. Weldin told the plaintiff to " report to Mr. Freeman at the acid works this morning, we want to start tearing down those chambers." He reported to Mr. Freeman and he said, ·· Those men have not got the lead cut away yet, you can go up on top and I will see about getting the lead cut away. If they get shaky don't stay up there."

The men began cutting the lead from the ceiling, which was put on in sheets by cutting a line across the building and letting the whole sheet swing down, held by the strips on the other edge. When this was done the building began to shake and the plaintiff remarked to Mr. Freeman that " this thing ought to be braced." Mr. Freeman had it braced and it did not shake any more. They removed all the rafters, after removing the boards nailed along the centre and each end and drawing the spikes from the ends, letting them down with ropes.

The lead was removed from the ceiling of the second and third chambers, before they began to work on them.

After taking down the rafters of the first chamber the men proceeded to remove them from the second chamber, Mr. Freeman saying to them when they began work, " Boys be careful not to get any one hurt." They began work on the third chamber on Satur-

day and continued on Monday until they had removed all the rafters but a few at one end, when one side of the chamber collapsed and the plaintiff went down with it and was injured. There was no shaking until just about the time it went down. Mr. Errickson was all the time around where the work was going on and was in the chamber when the side began to fall in and barely got out in time to escape being caught under it. Mr. Cresey and Mr. Weldin were frequently around while the work was going on. The third chamber was attached on one side to the pillars of the building in which the chambers were situated; that side did not fall. The third chamber was one hundred and thirty-four feet long, thirty feet wide, and twenty-two feet high. The other chambers were about " twenty or twenty-five feet shorter, about five feet narrower and two or three feet less in height." The joists in the top, which they were engaged in removing, were about three by twelve inches, reaching across each chamber, nailed at each end and a board nailed across at each end and along the centre. The plaintiff first went to the centre and ripped off the board which was nailed across the joists, then he ripped off the one at the end, on the side on which he was located, and then would pry the joists loose and, sitting astride of the sill upon which the end of the joists rested, would let the joists down. He had been sliding along in this manner and let down the joists until there were about four or five left when the side fell and he went down with it. He testified that he relied upon Mr. Freeman, Mr. Weldin, and Mr. Cresey to see that the building was braced.

*L. C. Vandegrift* (*E. G. Bradford* associated with him on the brief), moved for a nonsuit and in support of his motion contended as follows :

Where the evidence on the part of the plaintiff is such that if a verdict should be found for the plaintiff, the Court would be constrained to set it aside, it is not only reasonable, but it is the duty of the Court to stop the case at the conclusion of the plaintiff's testimony.

*Wheatley vs. P., W. & B. R. R. Co.,* 1 Marvel 305.

In actions of this kind, where the plaintiff is suing his employer for damages for personal injuries sustained while in the discharge of his duties as an employee, he must, in making out his case prove:

(a) That the injuries were the result of some negligent act of omission or commission on the part of his employer.

(b) That he, the plaintiff, in no way contributed to the same.

(c) That the employer had better means of knowing of the danger than the plaintiff had.

(d) That the injury was not merely the result of an accident or casualty.

(e) That the plaintiff did not assume the risk of his employment.

First (a). Is there anything in the plaintiff's testimony showing negligence on the part of the defendant?

These acid chambers were erected upon defendant's premises by its predecessor, and not being necessary for defendant's business were being torn down and removed.

As showing defendant's care in this work, it appears that it was in charge of Freeman Erickson, who was supervised by Mr. Weldin, who in turn was under the superintendance of Mr. Cresey.

Mr. Erickson was present about all the time. Mr. Weldin and Mr. Cresey were also in attendance while work was in progress. Thus three men in authority were watchful of the work, and Erickson, the boss immediately in charge of the work, was present all the time. He was even inside the chamber when it started to fall and barely got out in time. He, as defendant's representative, on the ground at the time, could not have known of or imagined

any danger. There were four men with ropes lowering these joists to the floor. When Erickson was told that the first chamber was shaking he immediately had it braced. Erickson told the plaintiff at the first chamber, right in the start of the work, that if they got shaky not to stay up on them. At the second chamber Erickson's caution was, " Boys, be careful not to get anyone hurt," and this caution was not an unusual one. If these cautionary words of Freeman Erickson, who at the time was the defendant's representative, had been heeded and applied, the plaintiff would most probably not have been injured.

The rule of law applicable under such circumstances is, that if the defendant through Erickson gave such orders to the plaintiff as would, if they had been obeyed, have prevented any harm arising to the plaintiff during the continuance of the work he was engaged in, then the defendant is not liable. *Satterlee vs. Morgan*, 35 La. Ann. 1167; *Durgin vs. Morgan*, 9 Allen, 396; *Riceman vs. Havemeyer*, 84 N. Y., 647.

There was never any occasion for such cautionary words at third chamber because there was no sign of weakness in it until it commenced to collapse.

What evidence did the plaintiff and his witness furnish, Second (b) Of his own negligence.

It appears that he had helped tear down two chambers and the one at which he was hurt was the third, and that he was fully capable of understanding and appreciating the accident which finally occurred, because he requested that the first one be braced, and it was done. He made no objection to undertaking the work, no suggestion of danger, nor any request looking to greater safety in the work, which was not at once granted. He made no such request with respect to the third chamber, nor said anything to any one about its being dangerous.

The plaintiff with his companions proceeded to tear loose the

three lines of boards running over the tops of the joists, at the ends and in the middle thereof, and to then wrench the joists loose from the plates on which they rested and to which they were spiked. In the performance of his work this plaintiff went backward astraddle of the plate to which these joists he was assisting to wrench loose were nailed and upon which they rested, nearly the whole length of the side that fell. Besides going over the plate astraddle as aforesaid, the plaintiff was otherwise about and over the chamber in loosening the side and middle boards and getting the joists down. As will thus be seen, the plaintiff was doing most of the work, and was undoubtedly the head man in the gang of four engaged in tearing down the chambers. He and his companions continued the work of taking the joists off the third chamber although the lead was hanging to the sides thereof, until all joists were off except three or four at one end of the chamber. It is thus demonstrated that the plaintiff took all the braces from the side of the acid chamber which fell, by removing one joist after another, expecting it to stand with the lead hanging to it and nothing to support it except the ends of the chamber 134 feet apart: thus manifesting a total disregard of the laws of gravitation.

The other side of the chamber was built into and braced by a row of posts running from the ground up and supporting the building. If two or three of these joists had been left at proper distances they would have been the most effectual brace the side which afterwards fell, could have had. The plaintiff was on top of the chamber and had the best means of knowing the conditions. He was not an ordinary laborer. He had been working about factories for sixteen or seventeen years previously. He knew more about these acid chambers than defendant did, because he had worked about them for defendant's predecessor about fifteen years when these chambers were in use.

He was like a man who would saw off the very limb he was sitting on and then when there was nothing to support him or he

found himself on the ground and injured by the fall, complain of his employer for allowing him to saw the limb off.

What evidence did the plaintiff and his witnesses furnish,

Second (b). That the plaintiff contributed to his own injury.

His chief contribution was in removing all the best braces the falling side could have had. In never suggesting, from the vantage ground of his position that the third chambers should be braced. In continuing to work on the second and third chambers without bracing them, as he demonstrated when starting on the first chamber, his ability to fully appreciate the danger of the chambers falling during the progress of the work.

What evidence did the plaintiff and his witnesses furnish?

Third (c). Of defendant's superior knowledge as compared with the plaintiff's knowledge of the situation.

The defendant had only recently purchased the property on which the acid chambers were situated. It had never used or had occasion to use them or know how to use them. The plaintiff, on the contrary, had worked about them for fifteen years before the defendant owned them. In taking down these chambers the plaintiff had been all over and about them and had sat astraddle the top plate of the side that fell from end to end; thus giving the greatest opportunity for inspection and the discovery of any latent defects such as the defendant never had or could have. The plaintiff's evidence conclusively shows that he certainly had equal knowledge with the master of any danger incident to the employment, and thus makes applicable the following well established legal principles:

That when a servant is employed upon work, which, equally within the knowledge of the master and the servant, is of a dangerous nature, the master is not liable for the consequences of an accident occurring to the servant in the course of that employment. *Williams vs. W. & W. Co.*, 9 Houst. 330; *Giles vs. D. S. I. Co.*, 7 Houst. 462; *Carey vs. Sellers*, 6 So. Rep. (La.) 813; 2 Thompson,

Negligence 995; *Wormley vs. Maine C. R'y Co.*, 79 Me. 406, 10 Atl. Rep. 49; *Simons vs. C.& T. R'y.*, 110 Ill. 340, 18 Am. & Eng. R'y Cas. 53; *Leonard vs. Collins*, 70 N. Y. 90; *Pa. Co. vs. Lynch*, 90 Ill. 305; *Priestly vs. Fowler*, 3 M. & W. 1.

The servant is bound to see patent and obvious defects in machinery or other instrumentalities of the business, and when he goes into the service of a person knowing that the instrumentalities employed are unsafe and dangerous, he takes the risk of their use upon himself, and cannot hold the master responsible for injuries resulting therefrom. *Williams vs. W. & W. Co.*, *supra; Toledo, &c., Co. vs. Asbury*, 84 Ill. 429; *Adams vs. Clymer*, 1 Marvel 80; *Linddall vs. Woods*, 44 Fed. Rep. 861; Wharton on Neg. (2 ed.) § 214.

The authorities cited sustain our contention that tearing down a building being a dangerous occupation, the one who goes upon such an unsafe structure, assumes the risks thereof which are discoverable by reasonable care. *Sweet vs. Ohio C. Co.*, 78 Wis. 127, 47 N. W. 182; *Carey vs. Sellers*, *supra; Hogan vs. Smith*, 125 N. Y. 774; *Wason vs. West*, 78 Me., 256, 3 Atl. Rep. 911; *Wheeler vs. Wason Mfg. Co.*, 135 Mass. 294; *Welfare vs. Brighton Ry. Co.*, L. R. 4 Q. B. 696.

The risks in this case were open to observation, and it required no special skill to forsee them, and therefore the risks were assumed by the plaintiff. *Cummins vs. Collins*, 61 Mo. 523; *Sweet vs. Ohio Ry. Co. supra; Duffy vs. Upton*, 113 Mass. 544; *Fitzpatrick vs. Twedale*, 73 Hun 105; *Carey vs. Ry. Co.*, 158 Mass. 228, 33 N. E. 512; *Goldthwaite vs. Ry. Co.*, 160 Mass. 554, 36 N. E. Rep. 486; *Allen vs. Iron Co.*, 160 Mass. 557, 36 N. E. Rep. 581.

And the plaintiff assumed these risks, even though he at the time was performing duties he did not contract to render. *Cummins vs. Collins*, *supra; Leary vs. Boston, &c.*, 139 Mass. 580; *Wormell vs. Maine C. Ry.*, 79 Me. 406, 10 Atl. Rep. 49.

If the employment became more hazardous, the plaintiff should have quit, because by continuing in the employment he assumed

the extra hazard. *Foster vs. Pusey,* 8 Houst. 181 ; *Leary vs. Boston,* 139 Mass. 580 ; *Mo. Furnace Co. vs. Abend,* 107 Ill. 51.

What evidence did the plaintiff and his witnesses furnish ?

Fourth (d). That the plaintiff's injury was other than the result of an accident or casualty ?

The best evidence of its being an accident or casuality lies in the fact that with almost perfect unanimity the plaintiff and his witnesses testified there was absolutely no premonition of danger. The side of the third chamber fell without any warning. · Such being the admitted facts, how can there be any recovery for an injury which is the result of an accident or casuality. *Williams vs. Walton & Whann Co.,* 9 Houst. 329 ; *Noyes vs. Smith,* 28 Vt. 59 ; *Seymour vs. Maddock,* 16 Ad. & El. 306, 5 Eng. L. & Eq. 265 ; *Wason vs. West,* 78 Me., 256, 3 Atl. Rep. 912.

What evidence did the plaintiff and his witnesses furnish ?

Fifth (e)  That he assumed the risk of his employment.

This assumption of risk by the plaintiff is seen in the fact that he was better acquainted with these chambers, their previous use and then condition than the defendant. His opportunities for minute observation and apprehension of danger far better. He made no suggestion of danger after he first went upon the first chamber, although the defendant's representatives were continously present. He had already proved to defendant he could appreciate the danger and would notify it if any existed. He was engaged in tearing down a building, which in itself is a dangerous work, and the usual rule with respect to providing a "safe place" does not apply. *Armour vs. Hahn,* 111 W. S. 313, 318 ; *Carey & Sellers,* 41 La. Ann. 500, 6 So. Rep. 813 ; *Ry. Co. vs. Jackson,* 12 C. C. A. 507, 65 Fed. 48.

The defect, if any there was, was either patent or latent. If the former, then it was assumed by the plaintiff. If the latter, it was not and could not be known to the defendant, and the best evidence of defendant's ignorance of a latent defect was Erickson's

entrance into the chamber the instant before it fell. *Williams vs. Walton & Whann Co.*, 9 Houst. 331.

In the face of these facts, how can it be held that there was sufficient evidence of negligence on the part of the defendant to send the case to the jury. It is a great hardship for a defendant to be put to the expense and trouble of preparing to defend such a case as this, and it certainly would have been a greater hardship and really against public policy to compel him to go further in it.

The burden of proof of negligence was on the plaintiff. *Wormell vs. Maine C. Ry.* supra; *Priestly vs. Fowler*, 3 M. & W. 1.

Proper inquiry is *not* whether the accident might have been avoided if the defendant had anticipated its occurrence, but whether, taking the circumstances as they then existed, the defendant was negligent in failing to anticipate and provide against the occurrence. *     *     * The prudence and propriety of men's doings are not to be judged by the event, but by the circumstances under which they act. Ray, Neg. of Imposed Duties 133, 135.

It is not sufficient that there be some evidence for the plaintiff, but *some evidence,* which *under the rules and upon the principles of law* is *sufficient to support a verdict.* A verdict cannot be based upon *mere conjecture.*

The rule that the employer shall provide a safe place for his employe to work in does not apply to work such as tearing down a building. Regard must be had always to the nature of the work. *Armour vs. Hahn,* 111 W. S. 318 and cases *supra.*

The rule is that when the verdict given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff, that such a verdict if returned, must be set aside, the Court is not bound to submit the case to the jury, but should direct a verdict for the defendant. *Simmons vs. Chicago, &c.,* 110 Ill. 340; *Pleasant vs. Faust,* 22 Wall. 120; *Comrs. vs. Clark,* 94 U. S. 278; *Randall vs. B. & O. Ry.,* 109 U. S. 478; *Wormley vs. Ry.,* 79 Me. 406, 10 Atl. Rep. 49; *Vanderford vs. Foster,* 65 Cal. 49; *Baldwin vs. Shannon,* 42 N. J.

Law 596; *Danio vs. Maxwell*, 12 Metc. 286; *Raley vs. Coll.*, 86 Pa. 80; *Wheatly vs. P. W. & B. R. R. Co.*, 1 Marvel 305.

*John Biggs* (*Bird* and *Sanborn* associated with him on the brief) for the plaintiff in reply.

The law applicable to the question as to what cases should be left to the jury is so well understood by the Court, and so well settled that it scarcely seems necessary to do more than state the proposition.

That whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case should properly be submitted to the jury. Not only the facts, but the inferences to be drawn from the facts are for the jury. *Railroad Co. vs. Stout*, 17 Wall. 663-664; Thompson, Negligence 1236; Cooley, Torts 670; *Detroit &c. R. R. vs. Van Steinberg*, 17 Mich. 99; *State vs. Railroad*, 52 N. H. 529; *Gaynor vs. R. R. Co.*, 100 Mass. 308; *Bridges vs. North London R. R. Co.*, 19 Conn. 566; *Penn Canal Co. vs. Bentley*, 66 Pa. 30.

How can it be said, as a matter of law, that, assuming the facts proven to be true, *no inference of negligence can be drawn therefrom?*

The work was of an unusual and dangerous character. The defendant had notice of the weakness of the structures by the shaking of the first chamber; and had recognized that fact by bracing it. Reasonable inspection would have disclosed the danger of attempting to tear down the third chamber without having first braced it, or removed the enormous weight of lead from its sides. Nothing was done to strengthen this third chamber. It was not braced, and the testimony is *that if it had been braced the accident could not have happened.* Nor was the lead removed.

The framework of the third chamber was eaten with acid. Reasonable care on the part of the defendant would have discovered this.

The testimony is, that the plaintiff being an unskilled laborer, relied implicitly upon the superior knowledge and experience of the

defendant to surround him with proper safeguards against accident. That the defendant had not warned the plaintiff of the danger, and that the plaintiff did not appreciate the risk to which he was exposed. Further, the defendant's superintendent practically admitted, the day after the accident, that the defendant had been negligent in not taking off the lead before attempting to tear down the chambers.

All of these were facts from which negligence on the part of the defendant might be inferred by the jury.

Impartial men viewing these facts might honestly reach different conclusions therefrom, and it is confidently submitted that the Court should leave them to the jury.

LORE, C. J., delivered the opinion of the Court.

We need hardly say to the gentlemen engaged in this case, or to the bar generally, that the Courts of this State never will grant nonsuits where there are any facts proved, from which either directly or from any reasonable inference the jury may reach a conclusion.

The effect of evidence is always for the jury to determine; whether there is any evidence to go to the jury is a question for the Court to determine.

We always prefer that questions of fact raised in a suit should be determined by the jury; but there is a duty devolving upon the Court from which they cannot shrink, neither under their sense of obligation to the oath they have taken, nor their duty to what is plainly and manifestly public policy.

We have carefully and throughly considered this evidence, and have unitedly reached the conclusion that, in this case, a nonsuit ought to be granted.

The counsel for the plaintiff refused to accept a nonsuit, in order that the case may be taken to the Court of Errors and Appeals; whereupon the jury were instructed by the Court as follows:

LORE, C. J., (charging the jury.)

This is an action upon the case to recover damages for injuries alleged to have arisen from the negligence of the defendant company. It is necessary for the plaintiff, in order to recover at all, to show you by some positive proof, or by such proof or evidence as that you may reasonably infer negligence, in order to entitle him to recover.

We have considered the testimony produced upon the part of the plaintiff in this case, and conceding it all to be true, yet in the judgment of the Court, there do not seem to have been any proofs made in this case by the plaintiff such as would warrant you in reasonably inferring that there was negligence on the part of the defendant; and under these circumstances it becomes our duty to say to you that you must return a verdict for the defendant, and we so instruct you.